OPINION
Appellant, Carrington Farm Development Company, is an Ohio general partnership engaged in the business of subdivision development. Appellees Pulte Home Corporation and Pulte Homes of Michigan Corporation are Michigan companies engaged in the construction and sale of single family residences.
In 1991, appellant and appellee Pulte Michigan[1]
entered into a written agreement wherein appellee would purchase lots from appellant's Monroe, Michigan subdivision, Carrington Farms Plat One. The agreement provided that appellee would have the exclusive right to buy and build on these lots; a purchase price of $35,000 per lot was established. The agreement was to remain in effect so long as appellee purchased a sufficient number of lots over a set period of time. It is undisputed that appellee failed to make sufficient lot purchases in the time set and the parties allowed the agreement to lapse.
In 1993, appellee and appellant met in a Monroe, Michigan hotel to discuss whether their relationship should continue. At this meeting appellee sought a price concession on the lots. The parties came to an accommodation, the terms of which are at issue in this lawsuit.
Appellee insists its representative offered to purchase ten of the thirty-two remaining lots in Plat One and additional lots as required on condition that appellant would continue to allow appellee to be the exclusive builder in the subdivision and would reduce the per lot price to $30,000. Appellant countered that it would be willing to accede to appellee's offer if, and only if, appellee agreed to purchase all of the remaining lots in Plat One. At the conclusion of this meeting, the issue was unresolved. However, appellant contends appellee accepted its counteroffer during a later telephone call between the parties' representatives. Appellee agrees that the telephone call resulted in an agreement, but that it was more in conformity with the prior written agreement in that it was not contingent on the purchase of a specific number of lots. Regardless of its terms, this contract was never reduced to writing.
It is undisputed that appellee subsequently purchased twenty-five lots from appellant at $30,000 each, before notifying appellant of its intent to forgo further purchases. After appellee terminated the purchase, appellant instituted this Ohio lawsuit alleging that appellee breached the oral agreement. Appellant sought to recover the $5,000 price differential between the original asking price and the purported oral contract price on each of the twenty-five lots appellee purchased.
In the trial court, appellee moved for summary judgment asserting that the underlying agreement, if any, was a parol contract for the purchase of land and void as violative of the Michigan statute of frauds. Appellant opposed the motion, arguing that the contract was taken out of the statute of frauds by the doctrine of part performance.
The trial court applied Michigan law to the transaction and concluded that part performance negates the statute of frauds only when the remedy sought is equitable relief. Since appellant's prayer was for money damages only rather than an equitable remedy, the court determined that the doctrine was unavailable. On this conclusion, the trial court granted appellee's summary judgment motion.
Appellant now brings this appeal, setting forth the following three assignments of error:
 "Assignment of Error No. 1: The trial court erred as a matter of law in determining that Michigan law does not permit a seller of real property who seeks monetary damages for breach of an oral agreement to invoke the part performance exception to the statute of frauds.
 "Assignment of Error No. 2: The trial court erred as a matter of law in determining that an Ohio forum court is required by Ohio's conflicts of law rules to apply a foreign state's statute of frauds and remedial laws, in lieu of the procedural and remedial laws of Ohio.
 "Assignment of Error No. 3: The trial court erred as a matter of law in holding that an Ohio court cannot enforce an oral contract for the sale of land under the doctrine of part performance since Michigan's remedial laws do not permit monetary damages."
On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 67, Civ.R. 56(E).
When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v.Montgomery (1984), 11 Ohio St.3d 75, 79.
 I.
We will consider appellant's second assignment of error first.
Antecedent to making its decision in this matter, the trial court conducted a conflict of laws analysis of the transaction to determine whether it should apply Michigan or Ohio law. The court noted that both states have adopted the principles set out in 1 Restatement of Law 2d, Conflict of Laws (1971), Section 188. See Gries Sports Ent. v. Modell (1984), 15 Ohio St.3d 284, syllabus; Chrysler Corp. v. Skyline Ind. Serv. (1995),448 Mich. 113, 120-121.
Section 188 of the Restatement provides that the rights and duties of the parties to a contract are determined by the local law of the state which has the most significant relationship to the transaction and the parties. Absent an effective choice of law by the parties, determination of the law applicable to an issue may be had by taking into account the place of contracting, negotiating the contract, performance, location of the subject matter of the contract and the incorporation or business situs of the parties.
The trial court noted that the land at issue is in Michigan, the negotiations relating to the purported contract occurred in Michigan, the location of performance was to be Michigan and the two defendants were Michigan corporations. The court also noted that there was nothing in the contract at issue which would invoke fundamental Ohio policies, see Shulke v.Midwestern Broadcasting Co. (1983), 6 Ohio St.3d 436, 438, and that it appeared Michigan possessed a greater material interest in the transaction and the parties than Ohio. Consequently, the court concluded that the Michigan law was the appropriate law to apply.
The trial court's analysis is well founded both in fact and in law. Therefore, the trial court's decision to apply Michigan substantive law is appropriate. Accordingly, appellant's second assignment of error is not well-taken.
 II.
However, it is not the application of Michigan's substantive law of which appellant principally complains. Appellant argues that the court's application of the fraud's statute to the oral contract is remedial in nature, and Ohio law requires that while the substantive law of a foreign state may be applied to substantive matters, remedial and procedural questions should be settled by Ohio law.
The substantive/procedural dichotomy as it relates to the statute of frauds in a conflict of laws setting has been the focus of legal scholars for more than one hundred fifty years. See Annotation, Statute of Frauds and Conflict of Laws (1973), 47 A.L.R.3d 137, et seq. The root of the controversy is an English case, Leroux v. Brown (1852), 12 CB 801; 138 Eng. Reprint 1119, which classified statutes of frauds according to whether the law was derived from the language of subsection four of the English statute of frauds ("no action shall be brought" on a contract for the sale of land without a writing) or subsection seventeen ("no action shall be allowed to be good"). The former, according toLeroux, was held procedural because it presupposes the existence of a contract and makes the statute of frauds only an evidentiary rule by which the contract is proved or disproved. The latter, however, goes to the rights and obligations of the parties and, according to the English case, is substantive law and is to be applied whenever the substantive law of a state is applied.
Legal scholars have criticized the procedural-substantive classification of statutes of frauds as undermining the basic principles of conflict of laws and being an open invitation for courts to reach a result-oriented conclusion by employing or ignoring the rule. 47 A.L.R.3d at 142.
Nevertheless, the Supreme Courts of both Ohio and Michigan have applied the Leroux rationale to their states' respective statutes of frauds, concluding that the statutes are procedural in nature. Heaton v. Eldridge (1874), 56 Ohio St. 87, paragraph one of the syllabus[2]; Third National Bank v. Steel
(1902), 129 Mich. 434, 438.[3]
The issue presented here is not totally academic. Applying the Leroux standards, we could conceivably conclude that Michigan's statute of frauds, as amended by their legislature (see footnote 3) is now substantive law. If we made that conclusion then the effect of the statutory pronouncement that "every contract * * * for the sale of lands shall be void unless * * * in writing * * *," MCLA § 566.108, would be to totally nullify the agreement, and appellant's purported oral contract would fail. Appellant would then be without recourse to revive it. It is certainly arguable that these are the conclusions which a Michigan court might reach given the opportunity to do so.
However, Ohio courts must be cautious in interpreting the laws of another state when the courts of that state have not clearly and unambiguously determined the rule of law at issue. In this case, appellees have referred us to a number of Michigan cases which it advances to support these conclusions, but none clearly and unambiguously finds the Michigan statute of frauds to be substantive law. In fact, quite the opposite is true as it concerns the issue of whether an oral contract "void" under the statute may be revived in any way. MCLA § 566.110 specifically states that, "[n]othing in this chapter shall be construed to abridge the powers of a court of chancery to compel the specific performance of agreements, in cases of part performance of such agreements." It would appear then that, whatever the status of Michigan's statute of frauds, partial performance (the doctrine upon which appellant rests its case) is available to take a case out of the statute of frauds. Miller Glass Co. v. Kushmaul
(1968), 13 Mich. App. 346, 349; Zaborski v. Kutyla (1971),29 Mich. App. 604, 606.
This is true in either Ohio or Michigan. See, generally, 51 Ohio Jurisprudence 3d (1984) 311, Statute of Frauds, Section 164; Cameron, Michigan Real Property 2d (1993), 527-529. However, there is also in both Ohio and Michigan authority that as an equitable remedy, partial performance is unavailable in a strict action at law for money damages only. Tier v. Singrey
(1951), 154 Ohio St. 521, 526; Gardner v. Gardner (1945),311 Mich. 615, 618.
In this matter, the trial court, citing White v. Walper
[a/k/a White v. Lenawee Co. Sav. Bank] (1941), 299 Mich. 109, concluded that part performance was unavailable to bar the application of the statute of frauds because appellant sought no equitable remedy, only money damages. While White and the other cited Michigan part performance cases clearly state that Michigan still considers part performance a device of equity, these cases do not clearly and unambiguously deny any remedy where money damages were the only relief sought. Many Michigan cases permit money damages in cases where both equitable and legal remedies are sought. See Cameron, Michigan Real Property Law, supra, at 527, Section F. The parties have directed our attention to no current case where partial performance was or was not permitted in a case where money damages only were sought. Again, we choose to exercise caution in premising our decision on the law of a sister state which has not clearly and unambiguously been stated. For this reason, we are hesitant to rely on the same grounds upon which the trial court premised its decision.
Instead, we choose to focus upon an argument which was raised in the trial court but which that court failed to address. The doctrine of part performance in both Michigan and Ohio is applicable only on the unequivocal demonstration by the one who seeks to invoke the doctrine that his or her acts of partial performance would not have been performed except for the contract. Michigan courts have long held that one relying on the doctrine of part performance to take an oral agreement for real property out of the statute of frauds, * * * must show acts unequivocally referring to and resulting from that agreement; such as the party would not have done, unless on account of that very agreement, and with a direct view to its performance * * *." McMurtrie v. Bennette
(1842), Harrington's Chancery Rpt. 124, 125-126(emphasis in original); see, also, Hazime v. Martin Oil of Ind., Inc.
(E.D.Mich. 1992), 792 F. Supp. 1067, 1070. The same rule holds true in Ohio. Hughes v. Oberholtzer (1954), 162 Ohio St. 330, paragraph three of the syllabus.
At trial, the burden of proof on the issue of whether part performance is available to take an oral contract out of the statute of frauds is with the party asserting the doctrine.McMurtrie, supra. Accordingly, when faced with a motion for summary judgment, Civ.R. 56(E) requires that a party raising part performance must come forward with evidence which, if believed, would establish the elements necessary to invoke the doctrine. We have carefully examined the transaction in this matter and must conclude that the partial performance asserted by appellant (the sale of twenty-five of the remaining thirty-two lots for $30,000 per lot) is equally as consistent with appellee's version of the agreement (verbally extend the prior written agreement, but reduce the price) as it is with appellant's. Consequently, appellant failed to come forth with evidence to unequivocally show that its purported part performance resulted from the agreement it proposes was entered into. Failing to demonstrate such a connection, the doctrine of part performance is unavailable to take this oral contract out of the statute of frauds irrespective of whether Ohio or Michigan law is applied. Since there is no dispute that one of these state's statute of frauds applies to this purported contract and both states bar recovery on a contract which is within the statute unless the doctrine of part performance applies, appellee is entitled to judgment as a matter of law.
Accordingly, we need not reach appellant's first and third assignments of error, since even to rule for appellant on these issues would not alter the outcome of the case.
The judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J.
 George M. Glasser, J.
 James R. Sherck, J.
CONCUR.
[1] Appellees Pulte Home Corporation and Pulte Homes of Michigan are separate entities. The trial court granted summary judgment to Pulte Home Corporation on the ground that appellant failed to come forth with any evidence that it was a party to the "contract." On appeal, appellee does not contest this ruling. Therefore, future references to a single appellee will be to Pulte Homes of Michigan.
[2] But, see Debaggis v. Notre Dame (Aug. 4, 1983), Cuyahoga App. No. 45594, unreported.
[3] Although it should be noted that the statute at issue inSteel read that "no action shall be brought [on a contract] unless * * * made in writing * * *." 3 Comp. Laws § 9518. While the statute at issue here provides that a contract not in writing, "* * * shall be void * * *." MCLA § 566.108.